UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DONNA BALL, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    No. 3:17-CV-78-DCP |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Deputy Commissioner for Operations, | ) |
| performing the duties and functions not | ) |
| reserved to the Commissioner of Social Security, | ) |
| | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 19]. Now before the Court is Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 16 & 17] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 20 & 21]. Donna Ball ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Nancy A. Berryhill ("the Commissioner"). For the reasons that follow, the Court will **GRANT IN PART** Plaintiff's motion and **DENY** the Commissioner's motion.

### I.    PROCEDURAL HISTORY

On March 29, 2013, Plaintiff filed an application for disability insurance benefits and supplemental security income benefits pursuant to Title II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et. seq.*, and 1381 *et. seq.*, claiming a period of disability that began on November 24, 2012. [Tr. 91-92]. After her application was denied initially and upon reconsideration,

Plaintiff requested a hearing. [Tr. 140]. On October 6, 2015, a hearing was held before the ALJ to review determination of Plaintiff's claim. [Tr. 34-58]. On November 13, 2015, the ALJ found that Plaintiff was not disabled. [Tr. 19-29]. The Appeals Council denied Plaintiff's request for review [Tr.1-4], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on March 2, 2017, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> 2. The claimant has not engaged in substantial gainful activity since November 24, 2012, the alleged onset date (20 CFR 404.15271 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: anxiety, depression, post-traumatic stress disorder, and personality disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of work at all exertional levels but with the following nonexertional limitations. She should avoid concentrated exposure to hazards. She is able to perform simple, routine, repetitive tasks, in that she can apply commonsense understanding to carry out oral written and diagrammatic instructions. She should have only occasional exposure to coworkers and the general-public.

2

> She is able to perform work in a low stress environment, with few changes in the work setting and no executive level functioning.
>
> 6. The claimant is capable of performing past relevant work as a maid. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from November 24, 2012, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 21-29].

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762,

773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

On appeal Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence. First, Plaintiff maintains that the medical opinions of record, including the opinions of treating physician Catherine Gyurik, M.D., consultative examiner Candice Blake, Psy.D., and nonexamining state agency consultants, Robert del la Torre, Psy.D., and P. Jerry Wright, Ph.D., support a marked limitation in the area of social functioning contrary to the ALJ's RFC determination. [Doc. 17 at 11-13]. Second, Plaintiff argues that the ALJ did not properly apply the treating physician rule to the medical opinion of Dr. Gyurik. [*Id.* at 8-11]. Plaintiff asserts that the ALJ failed to assess Dr. Gyurik's opinion for controlling weight and did not provide "good reason" for the weight assigned to the opinion. [*Id.* at 8-11]. The Court will address

5

Plaintiff's allegations of error in turn.

A.  **Social Functioning**

Plaintiff contends that substantial evidence does not support the ALJ's finding that Plaintiff can occasionally interact with the general public.

The opinion evidence regarding Plaintiff's social functioning is as follows. Plaintiff was consultatively examined by Dr. Blake on August 23, 2013, wherein Dr. Blake recounted Plaintiff's history of anxiety and panic attacks. [Tr. 538-41]. Dr. Blake noted that Plaintiff's panic attacks occurred daily if she left her house and interacted with other people. [Tr. 538]. Plaintiff reported dropping out of school when she was in the 8th grade "because she was throwing up everyday before she had to go to school" and was simply too nervous to attend. [*Id.*]. She obtained her GED and attempted a year-and-a-half of college before dropping out. [Tr. 538-39]. Plaintiff reported symptoms of racing heart, a smothering sensation, and a fear of passing out in front of others. [*Id.*]. In November 2012, Plaintiff was laid off from her job after having panic attacks in front of people. [Tr. 540]. Dr. Blake described Plaintiff as severely depressed, lacked motivation or interest, and slept excessively. [*Id.*]. Plaintiff had noticeably slow speech and mannerisms, she appeared overwhelmed, and she exhibited difficulty concentrating and explaining the details of her problems. [*Id.*]. In pertinent part, Dr. Blake concluded that Plaintiff was markedly limited in social interaction due to social anxiety. [Tr. 541].

Thereafter, at the initial level of the administrative proceedings, nonexamining state agency consultant Dr. del la Torre completed a "Mental Residual Functional Capacity Assessment" on August 30, 2013. [Tr. 72-73]. Assessing Plaintiff's social functioning limitations, Dr. del la Torre found that Plaintiff was markedly limited in her ability to interact appropriately with the general public and moderately limited in her ability to get along with coworkers or peers without

6

distracting them or exhibiting behavioral extremes. [Tr. 73, 88]. Dr. del la Torre concluded that Plaintiff could not interact effectively with the general public and, instead, would work better with things than people. [*Id.*]. However, Plaintiff could interact appropriately with supervisors and peers but such interactions should be brief, superficial, task oriented, and not within a crowded setting. [*Id.*]. On February 11, 2014, at the reconsideration level, a second nonexamining state agency consultant, Dr. Wright, concurred with Dr. del la Torre, making identical findings in social functioning. [Tr. 105, 120].

Finally, Plaintiff's treating physician, Dr. Gyurik, completed a "Mental Medical Source Statement" on May 19, 2015, wherein she responded to a variety of multiple-choice and short answer questions regarding Plaintiff's ability to perform different work-related activities. [Tr. 887-91]. In pertinent part, Dr. Gyurik opined that Plaintiff was precluded 15% or more of the time in an eight-hour workday from interacting appropriately with the general public, asking simple questions, accepting instructions and responding appropriately to criticism from superiors, and getting along with coworkers and peers without distracting them or exhibiting behavioral extremes. [Tr. 889].

In the disability determination, the ALJ summarized Plaintiff's mental health status examinations as having "been primarily within normal limits." [Tr. 24-25]. The ALJ cited a January 22, 2012 treatment note in which Plaintiff reported going out with her sister. [Tr. 25]. The ALJ then discussed several treatment notes from 2013, in which Plaintiff was noted as having a pleasant, appropriate, or normal mood and affect, normal thought process and thought content, cooperative attitude, and denial of homicidal and suicidal thoughts upon examination. [*Id.*]. Throughout 2014, Plaintiff was noted as appearing stable; her reasoning, judgment, and insight were noted as fair; her thought process was normal; her anxiety was stable; her mood and affect

7

were normal; and she was oriented to time, person, and place. [*Id.*]. The ALJ also highlighted two instances in which Plaintiff's mood was noted as depressed and anxious. [*Id.*].

As to the opinion evidence, the ALJ assigned "little weight" to Dr. Gyurik's opinion because the opinion was "inconsistent with the mental status examinations at her various office visits," there was no evidence of hospitalizations, and "mental status examinations were consistent at non-mental health providers as well, on the few occasions [Plaintiff] presented for care." [Tr. 27]. Dr. Blake received "some weight," but the ALJ concluded that the record did not support marked limitations in social functioning. [Tr. 27-28]. Finally, the ALJ gave "substantial weight" to the opinions of Dr. del la Torre and Dr. Wright. [Tr. 28]. The ALJ characterized their opinions as only assessing moderate limitations in maintaining social functioning. [*Id.*].

Plaintiff argues that the opinion evidence of record unanimously supports a finding that she is markedly limited in her interactions with the general public, and the ALJ failed to cite to any substantial evidence to the contrary. [Doc. 14 at 11-13]. The Court agrees. While the ALJ cites to "normal" mental status examination findings such as appropriate affect and thought content, normal mood, cooperative attitude, and fair reasoning, judgment and insight, the Court concludes that such findings are not particularly relevant to Plaintiff's ability to interact with the public. To be sure, treatment notes nonetheless contemporaneously document Plaintiff's fear of leaving her home and interacting with the public. In fact, Plaintiff's social phobia is well documented throughout the record. [*See e.g.*, Tr. 384, 389, 561, 571, 574, 577-78, 580, 587, 616, 618, 633].

For example, Plaintiff frequently reported symptoms of panic attacks in social situations, prompting her to drop out of school and later quit her job due to severe social anxiety. [Tr. 538, 580]. Plaintiff also reported sleeping 16 hours a day in an effort to isolate herself. [Tr. 616, 618].

Moreover, she related that she does not leave her home except for medical appointments. [Tr. 560, 580]. Medical records further demonstrate that on at least two occasions, Plaintiff planned to seek inpatient treatment through her mental health provider's Crisis Stabilization Unit but never followed through due to her fear of being around others. [Tr. 558].

Further supporting marked limitations in interacting with the public are the opinions of Dr. del la Torre and Dr. Wright, both of whom concluded that Plaintiff was markedly limited in her ability to interact with the public and whose opinions received substantial weight from the ALJ. Although the ALJ is not obligated to adopt all of the findings of a medical source whose opinion receives great weight, *Moore v. Comm'r of Soc. Sec.*, No. 1:13-CV-00395, 2013 WL 6283681, at *7 (N.D. Ohio Dec. 4, 2013), the ALJ in the instant matter mischaracterized the opinions of Dr. del la Torre and Dr. Wright as only assessing "moderate" limitations in social functioning. Both doctors concluded that Plaintiff was markedly limited in that she "cannot interact effectively with the general public." [Tr. 73, 88, 105, 120]. Additionally, the opinions of Dr. Blake and Dr. Gyurik echo marked limitations in Plaintiff's ability to interact with the public. In short, the ALJ's decision does not provide substantial evidence for concluding that Plaintiff retained the ability to occasionally interact with the public.

The Commissioner argues that the record undermines a marked limitation in interacting with the public because Plaintiff attended doctor appointments and therapy sessions, she attended college for two years before quitting, she attended church, she visited her mother-in-law in the hospital, she spent time with her nephew and grandson, and she reported going out with her sister in 2014. [Doc. 21 at 9] (citing Tr. 359, 538, 562, 574-75, 603, 633-34). As an initial matter, the Court declines to penalize Plaintiff for seeking mental health treatment. Furthermore, the Court finds no basis to conclude that Plaintiff's decision to seek professional help to address her

impairments is tantamount to an ability to interact with the general public on a continuous and sustained basis for purposes of demonstrating that Plaintiff can perform substantial gainful activity. As to the remaining activities cited by the Commissioner, the Court is unpersuaded that said activities undermine a marked limitation. First, Plaintiff attended college in 1987, 25 years prior to her alleged onset date. [Tr. 212]. Second, Plaintiff reported going to church one time in a six month period. [Tr. 359, 634]. And while Plaintiff reported one instance of going out with her sister, she also reported that she felt exhausted after being out a short while. [Tr. 620]. Treatment notes also clarify that Plaintiff's mother-in-law was on in-home hospice care, not in the hospital, when Plaintiff visited her. [Tr. 572, 633].

Accordingly, the Court finds that substantial evidence does not support the ALJ's conclusion that Plaintiff can interact with the public on an occasional basis. Therefore, Plaintiff's assignment of error in this regard is well-taken. The case will be remanded for further consideration of Plaintiff's social functioning abilities.

### B. Opinion of Catherine Gyurik, M.D.

In addition to Plaintiff's contention that Dr. Gyurik's opinion supports greater limitations in social functioning than found by the ALJ, Plaintiff also argues that other findings made in Dr. Gyurik's Mental Medial Source Statement were entitled to controlling weight and the ALJ did not give good reason for finding otherwise. Because the Court's order of remand in this case will necessitate, by default, reconsideration of Dr. Gyurik's opinion, including the weight the opinion deserves and the reasons for that weight, the Court finds that it need not address Plaintiff's remaining arguments concerning the treating physician rule.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 16**] will be **GRANTED IN PART**, and the Commissioner's Motion for Summary Judgment [**Doc. 20**] will be **DENIED**. The case will be **REMANDED** to the ALJ for reconsideration of Plaintiff's ability to interact with the general public by re-weighing the medical opinions and other evidence of record.

IT IS SO ORDERED.

ENTER:

Debra C. Poplin
United States Magistrate Judge